John Geddes having a Wife & one Daughter married to Bobby by whom she had two Daughters the Pit. Rebecca her eldest & Eliz. & was also ensient of a Son by his Will May 18. 1719. devises to his Wife 3 Slaves during her Life & the absolute Property of six more And gave her during Life a Plantation called Totero fort & the Use of all his Stock Household Stuff &c. on that plantation and the use of all his household stuff, stock &c. at Sandy Point And declared that after his Wifes Death the principal Stock & appraised Value of the Goods should be made good to those who had Power to demand them by that Will And after his Wifes Death gave all his Household Stuff &c. at Totero fort to her Daughter & her Daughters to be equally divided among them And gave his Daughters eldest Son if any such there should happen to be all the Stock & Household Stuff at Sandy Point And gave his Wife the Use of most of his Plate *B214 (naming the particulars) during Life And gave her all his China and after his Wifes Death gave the Use of his Plate to his Daughter & after her Death to her eldest Son if no such to her eldest Daughter He likewise gave his Wife [200] 100;£. of the Mony in Mr. Perrys Hands The rest to be equally divided betwixt his Daughter & her 3 aforesaid Children And appointed his Wife Guardian to the Pit. Rebecca & sole Extrix & desired she should return a settled Account of his Estate in Virg’a & Mony in England but should not be obliged to give Security during her Widowhood because of the great Confidence he placed in her just Management for herself & others And by a Codicil to his Will declared that the Household Stuff &c. given to his Daughters eldest Son at Sandy Point in Case there should be no such he gave to be divided betwixt his Daughter & her Children already mentioned but made no Disposition of the Surplus of his Estate
The Wife proved the Will & possessed herself of all the Testors Slaves & personal Estate amounting besides the Plate devised & 29 oz... 8 pert.. more to 689.14.4>£ but never returned a settled Acco’t of the Estate or of the Monies in England and soon after the Testors Death married one Syme The Testors Daughter soon after his Death was delivered of a Son who died at 7 years old before the Testors Wife Syme possessed himself of all the Testors Estate & as Guardian to the Pit. got all the Estate so as aforesaid devised to her & also what she had from her Father who died in 1725 After the Death of the Testors Wife in 1728. Syme married the Deft. Sarah & died intestate She administered & married the Deft. John
This Bill is brought to have the Plate delivered a Moiety of the principal Stock at Sandy Point & Totero fort and of the appraised Value of the Household Stuff & a Moiety of the Residue of the Testors personal Estate including 200^. & Costs recovered by Syme & his Wife of the Extors of one Danzie She & her Sister being next of Kin And to have an Acco’t of the Pit. Rebecca’s Estate & of the Profits while Syme was Guardian
The Deft. Sarah answers alone & says Syme p’d Bobby & his Wife the Pits Father & Mother more Mony than belonged to her & her Children in the Hands of Perry and prays to be allowed those Paiments That the Testors Wife lived 8 years & used the Stock & Household Stuff all that Time & hopes Symes Estate shall not be answerable for the appraised Value but for the Value at her Death Says she is ready to deliver the Plate & *B215 pay the Pits what is due to them by Geddes’s Will and annexes sev’l Acco’ts of the Estate & submits how far the Estate of Syme is chargeable Says she is ready to account for the Profits of the Pits Estate while Syme was her Guardian being allowed for her [201] Maintenance & Education And as to that Part of the Bill praying a Decree for a Moiety of the Residue of Geddes’s Estate She demurs & insists the Residue belonged to the Extrix Or if it did not the Pits are not intitled to so much as a Moiety
In this Case there are 3 Points 1. Upon the Demurrer whether the Surplus of Geddes’s Estate is to go to the Extrix or next of Kin If to the next of Kin what Part the Pits are intitled to 2. Whether the Paiments made by Syme to the Pits Father & Mother & to the Mothers 2. Husband of the Pits Legacy are good Paiments to bar her in this Case 3. Whether the Defts. are answerable for the appraised Value of the Household Stuff &c. or the Value when the Testors Wife died & whether an Allowance is to be made for the Goods worn out & the Stock that died in her Life time as is sought by one of the Accounts annexed to the Defts. Answer
1. Whether the Surplus not being disposed by the Will is to go to the Extrix or be divided among the next of Kin It is sayed in our old Books that the making of a Man Extor is a Gift of all the Testors personal Estate And so the Law was taken for some Ages till after the Stat. of Distributions 22. & 23. Car. 2. since when a Change in the Law has been introduced as to this Matter Insomuch that it is now become a Kind of settled Rule in Equity that where the Surplus is not disposed of and the Extor has a particular Legacy given him such surplus shall not go to the Extor but to the next of Kin and the Extor shall be taken as a Trustee for them Where the Extor has no particular Legacy the Law still remains as it was & he shall have the Surplus
The Reason of this Change in the Law I apprehend to be this Before the Statute of Distributions the Right to Intestates Estates was very unsettled It remained pretty much in the Breast of the Ordinary to dispose as he thought fit for to whomsoever he granted Administration he had a Right to the whole Estate At the Common Law he had a Power to dispose as he thought fit to pious Uses & was not obliged to pay the Intestates Debts till the Stat. of Westm. 2. The 31. E. 1. gives him Power *B216 to grant Administration to the next of Kin but the 21. H. 8. 5. enacts that he shall grant Administration to the Widow or next of Kin or both Yet after this Stat. if Adm’tcon was granted to a Stranger unless there was an Appeal in 14 Days the Wife & Children were excluded & the Adm’nx run away with the whole Estate Which Mischiefs the Stat. of Distributions has remedied by directing a Distribution among the Wife Children & next of Kin let the Adm’tcon be granted to whom it will Vide 3. Mod. 59. to 64. Palmer ag’t Allicock
Now it is plain before this Stat. no one could set up a Right to the Surplus of an Estate undisposed of by Will The next of Kin had no 'Right to it unless Adm’r & no Adm’tcon was then or is now granted where there is a Will So that the Law of Necessity [202] threw the Surplus on the Extor there being no other Person that could claim it But now that this Act has established a Right in the next of Kin where a Man does not dispose of the Residue or Surplus of his Estate Equity will regard him an Intestate as to that & decree a Distribution among the next of Kin that is where the Extor has a particular Legacie given as I have already sayed and that for this Reason that it is absurd to suppose a Man should intend to give all & some to the same Person And therefore the Devise of a particular Legacie makes the Implication very strong and violent the Testator did not intend more because if he did the particular Legacie must be useless
I take the Law to be very clear & settled as to this Matter where Strangers are made Extors But I must own the Resolutions are not so unanimous where the Wife is Extrix Yet I believe it will appear the Cases are more & weightier that a Wife Extrix shall not have the Surplus than that she shall Then there are such particular Circumstances in this Case to differ it from any that can be shown that I am persuaded it will be y’r Honours Opinion she ought not to have the Surplus in this Case
The first Case of this Sort that we meet with is Foster & Munt 1. Vern. 473. where the Extor gave particular Legacies to his Children & to his Extors 10;£. a piece for their Care And the Surplus decreed to be distributed
Bailey & Powell 2. Vern. 361. Ch. Ca. Abr. 244. 2. The Testrix gives particular Legacies to all her next of Kin by Name & also to her Extors The Surplus decreed to be distributed *B217 Many other Cases where Strangers were Extors vide Ch. Ca. abr. 244. & no Authority to contradict them except where parol Proof has been admitted to prove the Testator intended the Surplus to his Extor as Batchelor & Searl 2. Vern. 736. Cha. Ca. Abr. 246. & Littlebury & Buckley there cited — Vide Mod. Ca. Eq. 9. Rashfield & Careless. Ibid 11 & 27.
Then as to to the Cases where a Wife is made Extrix I conceive the Law is the same unless from the Nature of the Particular Legacy or some other collateral Circumstance it may be presumed or can appear the Testator intended the Surplus to the Wife
Darwell & Bennet cited 2. Vern. 677. The Testator gave his Wife 100.£. & the Interest of 300Á. for her Life & made her & others Exors Surplus decreed to be distributed
Ward & Lane cited 2. Vern. 677. A Man made a Will & his Wife Extrix Lived 20 years afterwards & acquired an Estate Surplus decreed to be distributed
Lady Granvile a Duchess of Beauford 2. Vern. 648. The Duke gave the Use of the Table Plate to the Duchess for Life & made her Extrix Surplus decreed to be distributed by L’d Cowper This was reversed by the House of Lords not upon the Face of the Will [203] but upon the parol Proof as 1 conceive that the Duke intended the Surplus to the Wife And so this Case is rather for us The very admitting of Proof being a strong Argument the Extrix would not have the Surplus without And there is no Sort of Proof in this Case Another Reason for this Reversal was because the Duchess had not an absolute but only a special Property (a) in the Plate devised to her. Mod. Ch. Ca. 10. But here the Wife has sev’l absolute Legacies The strongest Case against us is —
Ball & Smith 2. Vern. 675. Smith devised to his Wife some Plate & Goods she had as Extrix to a former Husband And the Surplus was decreed to the Wife 2.Reasons given for this Decree are because the Will was made before the Case of Foster & Munt And for that nothing was devised to the Wife but what was her own before Reasons that will not hold in our Case where the Wife has a very large & ample Provision The Chancellor himself (Lord Harcourt) seemed not to be perfectly satisfied but hoped for setting the Point as he sayed it would receive the *B218 Judgment of the House of Peers Whether it ever did does not appear So this is only the Opinion of Lord Harcourt supported by no preceeding Authority ag’t that of Lord Cowper in the Case next before & the Authority of Darwell & Bennet & Ward •& Lane before remembered
Then the particular Circumstances of this Case differ much from that of Ball & Smith There the Wife had nothing given her but was her own before & so in Effect no Legacy Here the Wife has very great Legacies six Slaves & 100;£. Sterling absolutely besides the Use of other Slaves two Plantations Stock & Household Stuff for Life From whence the Implication is very strong and violent that he did not intend her any more than what is particularly given for if he intended her the Surplus the particular Legacies are useless
But there is still something further in this Case & that is a Clause in the Will which seems clearly to shew the Testator did not intend the Surplus to the Wife He directs her to return a settled Account of his Virginia Estate & Mony in England & directs that she shall not give Security because of the great Confidence he placed in her just Management for herself & others To what Purpose was she to return a settled Account if she was to have the whole Surplus Then that Expression of managing for herself & others is a plain Indication he did not intend her the whole So that besides the general Rule where a particular Legacy is given to the Extrix that she shall not have the Surplus Here are the Words of the Will itself from which I conceive the Implication is made stronger that the Testor in this Case did not intend the Surplus to his Extrix All these Circumstances considered which differ this Case so much from that of Ball & Smith the only [204] Authority in Point ag’t us And as that Case is opposed by more numerous Authoritys & the Chancellor himself seemed to doubt I hope there is no Reason to depart from the general Rule that an Extor shall not have the Surplus where a particular Legacy is given but that it shall be distributed among the next of Kin
As to the Share of the Surplus the Pits, are intitled to I conceive it is a Moiety if any Geddes left only one Daughter whom the Pit. & her Sister represent If the Surplus does not belong to the Extrix the Representatives of the Daughter must be intitled to it & consequently the Pit. to one Moiety The Defts. I suppose would bring in the Wife to have a Share of the Surplus *B219 with the Daughter but I apprehend she ought not to be let into any Share any more than to the whole It is true if Geddes had died Intestate the Stat of Distributions would have given a 3d to the Wife but this Case is very different We are now before the Court not for the Distribution of an Intestates Estate but to take the Surplus from the Extrix upon a Presumption or Implication that the Testor did not intend it to her This Intention is proved by the Devise of particular Legacies to the Extrix From whence we say the Implication is strong & violent he did not intend her any more This Argument then is as strong to exclude her from any Share of the Surplus as from the whole The Surplus in these Cases is taken in Equity as a Trust in the Extor for the next of Kin but this must be understood of such as the Testor has not excluded by his Will Here is no Room to imply a Trust for them whom the Testor has declared shall not have it And therefore in this Case if he did not intend his Wife more than is particularly given his Intention is clear to exclude her from any Share of the Surplus And then the Pits are well intitled to a Moiety
This Point is not touched in any of the Cases supra Only in that of Lady Granvile ag’t Duchess of Beauford it seems the Duchess was to have a third
2. Whether the Paiments made to the Pits Father & Mother & to the Mothers 2d Husband are to be allowed as a Satisfaction of the Pits Legacy And I conceive not It is true formerly the Chancery did allow a Paiment to the Father of a Legacy given to an Infant to be a good Paiment with this Difference which seems to have little Foundation in Reason viz If the Extor took Security to indemnifie him then he paid it at his own Peril & should be chargeable to the Infant Notwithstanding such Paiment But if he took no Security the Paiment was good ag’t the Infant 1. Ch. Ca. 245. But this Practise giving a Plandle to indigent Parents & [205] knavish Extors to juggle Infants out of their Rights the Chancery of later Times has thought fit to extend their Care further for Infants and such Paiments are now always disallowed It is become a settled Rule and even where the Circumstances are ever so hard such Paiment will not be allowed So it was decreed by Lord Cowper Mich. 1715. between Doyley & Tollferry where the Hardships upon the Extor were very singular the Son living 15 Years after he was of Age & having a Promise from his Father when in good Cir *B220 cumstances to pay it tho he afterwards became insolvent But the Chancellor to discountenance the Paiment of Infants Legacies to their Parents And that the Case might not be cited as a Precedent when the particular Circumstances attending it were forgotten Decreed ag’t the Extor Ch. Ca. Abr. 300. 1. Wil 285. S. C. Rep’ts in Equity 103. S. C. Rep’ts in Eq. S. C.
By this Case it appears to be a settled Rule in Equity to disallow the Paiment of an Infants Legacy to the Parent And after reading this Case it may seem needless to say any thing more upon this Head But to put this Point beyond all Dispute I must observe further that Mr. Syme who pretended to make these Paiments was actually the Pits Guardian It is admitted in the Answer And the Defts. submit to account for the Guardianship This pretended Paiment then to the Father must be looked upon as a meer Fraud especially when the Nature of this pretended Paiment is considered w’ch appears by the Acco’ts annexed to the Answer Mr. Syme sells to Bobby the Pits Father his Wife’s Estate for Life in the Totero Plantation and the Cons. Bobby was to pay viz. 127.;£. is charged in the Defts. Acco’ts as a Paiment in Part of the Pits. Legacy And this is the greatest Part of what is pretended to be paid to the Pits. Father As to the Paiments to the Mother or her 2d Husband I presume nothing need be sayed There is no Instance that such Paiments were ever allowed under any Circumstance much less then in this Case I am sorry to observe Mr. Syme’s Conduct carrys not the fairest Appearance Surely it was his Business as the Pits. Guardian to retain what belonged to her & not pay it to a Father or Mother that he knew were indigent & careless The principal Reason why a Paiment to a Father was formerly allowed was this that the Father is by Nature Guardian to his Child but that Reason must cease where there is another Guardian So that here was no Kind of Pretence to pay to the Father And therefore this pretended Paiment must be looked upon as a Contrivance of Symes to secure the Mony due from Bobby upon the Sale of the Plantation And so is a fraudulent Paiment that ought to meet with no Countenance in Equity admitting such Paiments were sometimes allowed But as the Rule of Equity is general that no paiment to a Father of his Childs Legacy is good under any Circumstances Here can be nothing sayed to support such a Paiment upon the particular Circumstances of this Case
[206] 3. Whether the Defts. are answerable for the appraised *B221 Value of the Household Goods or the Value when the Testors Wife died And whether any Allowance is to be made for the Goods worn out & the Stock that died in her Lifetime I conceive there is no Ground for the first Part of this Question The Testors Will is express that the appraised Value of the Goods shall be made good to those in Rem’r I hope what the Testor has expressly directed shall be complied with. Nor is there any thing in the Objection that may be made that then the Legacy is of small Benefit It is to be considered the Wife has very great Legacies besides and it is surely some Advantage to have the Use of Things during Life to pay their Value at a great Distance of Time as in this Case after Death However that be the Testors Words are express & there is no Room to make other Construction And if so \sic\
■ Then certainly no Allowance is to be made for the Goods worn out by the Testors Wife There is a great Difference between this Case and a common Devise of the Use for Life with Rem’r over In the common Case I agree if the Goods are worn out in Life time of the Devisee for Life he in Rem’r must be contented •with what is left of the specifical Goods devised but here we are not to have the Goods but the appraised Value after the Wifes Death And so it is the same as if he had sayed My Wife shall have the Goods paying the appraised Value at her Death This was clearly the Intention And if we are to have the appraised Value at all we must have the Value of the whole Goods
As to the Cattle that died in the Wifes Life I think no Allowance ought to be made for them neither the Testor directs that after his Wifes Death the principal Stock shall be made good to those in Rem’r By which I apprehend he intended that his Wife should have the Use & Benefit of the Stock & the Increase but that as good a Stock as the principal was at his Death should be made good after her Death to those in Rem’r It cannot be supposed he intended only what should be left of the specifical Stock should go to those in Rem’r that must have been an useless Devise after a Life since he could not suppose many of them would be then left Therefore by directing the principal Stock to be made good he must intend a Stock of equal Value. And then it is nothing to the Purpose if they had all died The Wife might have refused the Legacy if she did not like it but having accepted it she must perform the Condition upon which she accepted it that is to account for a Stock of equal Value to those in Rem’r As she had the Use of this Stock & the Benefit *B222 of the Increase she ought to bear the Loss Qui sentit commodum &c. •
Randolph for the Deft. The Surplus of an Estate undisposed [207] of by Will has been sometimes decreed for the next of Kin & some times for the Ex’r according to the Testators Intention \sic\ the Rule to govern these Cases The Wife here brought a great Fortune to the Husband who was a Beggar Upon the Marr he articled to give her 200;£ besides a third of his Estate as appears from a Clause in his Will The provision made for her by the Will is not equal to that, And it ought to be presumed the Testor intended to do Justice which he will not unless the Wife has the Surplus Marr Articles ought to be supported And the Wife had such an Equity by those Articles as ought to rebut the Pits. Besides there is a great Difference where the Wife & where a Stranger is made Extor And there is no Instance where the Surplus has been taken from a Wife Extrix Except that of Ward & Lane supra It is not to be supposed a Man makes his Wife Extrix meerly to give her an Office of Trouble but rather of Benefit to take the Surplus Cited Griffith & Rogers & Jones & Westcomb Ch. Ca. Abr. 245. 8. 10. Ball & Smith & Bachelor & Searl supra both which were much relied on He agreed the Paiments were not good but insisted the Plt.s ought to take the Stock & Household Goods in the Condition they were at the Wifes Death And that the Defts. were not accountable for the appraised Value
Repl. The Testors Intention is the undoubted Rule to govern Cases of this Sort And this Intention may be either expressed or implied The Argument here is drawn from an implied Intention of the Testator A strong & violent Implication that he could not intend the Surplus after devising so many & valuable Legacies 'And without a strong & violent Implication I agree the Surplus is not to be taken from the Extor which is all that can be collected from the Case of Bachelor & Searl so much relied on Parol Proof was there admitted in Favour of the Extors Title And without that Proof the same Chancellor (Cowper) decreed ag’t the Extrix in the Case of La. Granvile & Dss of Beauford Supra As to the Case of Griffith & Rogers the Wife there had only ten Books given her & it could not be supposed the Testor intended her no other Provision Jones & Westcomb is indeed a stronger Case but possibly it turned upon the Nature of the particular Legacy being a Term which is a Chattle real & *B223 no Devise to the Wife of any Estate meerly personal And then both these Cases are within the Rule I first laid down. Note this last was a Decree of Lord Harcourts & about the same Time with Ball & Smith There seems to be little Foundation in Reason for the Difference where a Wife & where a Stranger is Extor Especially where the Wife has a handsome Provision as in this Case Certainly the Implication is as strong that the Testor intended no more in the one Case as the other The Circumstances of the Wifes bringing a great Fortune & the Marr Articles are not at all in Proof & so ought not to influence But admitting all to be true that is sayed the Husband by the Marr acquired the absolute Property in his Wifes Fortune & might dispose as he pleased Nor can it be thought reasonable or equitable that he [208] should give all to his Wife & leave his Child & Grandchildren to starve And as to the Marr Articles it will be Time enough to talk of them when a Performance of them is sought for
Oct. 1736. The Court decreed the Surplus to be distributed & the Wife to have one third that the Paiments were not good that the Defts. sho’d acco’t for the Value of the Household Stuff at the Time of the Wifes Death And for as good a Stock as was left by the Testor at his Death And pay the Pits, a Moiety of the Value
As to Distribution of Surplus see Farrington a Knightley Prec. Chan. 566. & 1. Will. 544. In w’ch last all the Cases are collected & settled clearly for a Distribution where Ex’r has a Legacy & no Diff. Whether a Wife or a Stranger be Ex’r
See also Prec. Chan. 323.

 Vid. Hoskins a Hoskins Prec. Chan. 268.